# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

United States of America,         )     Civil Action No.: 3:19-cv-03403-JMC
                                )
           Plaintiff,      )
                                )
Ex rel. Jeffrey Harbit and Alan Inglett,  )
                                )
        Plaintiffs-Relators,  )
v.                            )
                                )     **ORDER AND OPINION**
Consultants in Gastroenterology, P.A.,  )
South Carolina Endoscopy Center, LLC,  )
South Carolina Endoscopy Center Northeast,)
LLC, S. Gabe Saleeby, M.D., March E.  )
Seabrook, M.D., John W. Schaberg, M.D.,  )
Eugene W. Stuart, M.D., Rajeev Vasudeva,  )
M.D., James A. Richter, M.D., Matthew N.  )
Thomas, M.D., and Erick Singh, M.D.,  )
                                )
         Defendants.  )
                                )

Plaintiff-Relators Jeffrey Harbit and Alan Inglett (together "Plaintiff-Relators"), on behalf of Plaintiff United States of America (the "United States" or the "Government"), bring this action against Defendants Consultants in Gastroenterology, P.A. ("CIGPA"); South Carolina Endoscopy Center, LLC ("SCECL"); South Carolina Endoscopy Center Northeast, LLC ("SCECNL"); S. Gabe Saleeby, M.D.; March E. Seabrook, M.D.; John W. Schaberg, M.D.; Eugene W. Stuart, M.D.; Rajeev Vasudeva, M.D.; James A. Richter, M.D.; Matthew N. Thomas, M.D.; and Erick Singh, M.D. (collectively "Defendants") alleging that their actions violated the False Claims Act of 1986 ("FCA"), 31 U.S.C. §§ 3729–33.[1]  (*See* ECF No. 16.)  Specifically, Plaintiff-Relators

---

[1] "Under the FCA, private individuals known as relators may file qui tam civil actions against alleged fraudsters on behalf of the United States [G]overnment."  *U.S. ex rel. Lanahan v. Coun[t]y of Cook*, Case No. 17 C 5829, 2020 WL 6894395, at *6 (N.D. Ill. Nov. 24, 2020) (citing *U.S. ex rel. Watson v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013); 31 U.S.C. § 3730).  "If the Government does not intervene in the action, as here, a relator may proceed with the action solo

allege four (4) separate causes of action for: (1) violation of 31 U.S.C. § 3729(a)(1)(A) and (B) (the "FCA claims"); (2) violation of 31 U.S.C. § 3729(a)(1)(C) (the "FCA conspiracy claim"); (3) violation of 31 U.S.C. § 3729(a)(1)(D) (the "FCA conversion claim"); and (4) violation of 31 U.S.C. § 3729(a)(1)(G) (the "reverse FCA claim"). (ECF No. 16 at 16 ¶ 70–19 ¶ 91.)

This matter is before the court on Defendants' Motion to Dismiss pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 21.) Plaintiff-Relators oppose the Motion in its entirety. (*See* ECF No. 25.) For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss. Specifically, the court dismisses Plaintiff-Relators' FCA conspiracy claim and reverse FCA claim. (ECF No. 16 at 17 ¶ 79–18 ¶¶ 81, 87–19 ¶ 91.) The court, however, denies Defendants' Motion to Dismiss Plaintiff-Relators' FCA claims and FCA conversion claim. (*Id*. at 16 ¶ 70–17 ¶ 78, 18 ¶¶ 82–86.)

## I.    RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff-Relators allege that they are both Certified Registered Nurse Anesthetists. (*Id.* at 3 ¶¶ 7, 8.) Harbit further alleges that he was an employee of CIGPA from 2012 to 2018 and Inglett alleges he was employed from 2017 to 2019 by CIGPA, SCECL, and SCECNL. (*Id.*) Both Plaintiff-Relators allege they were responsible for reviewing patient records for the purpose of complying with regulations of the Centers for Medicare & Medicaid Services. (*Id.*)

Defendants CIGPA, SCECL, and SCECNL are alleged to be South Carolina corporations in Richland and Lexington counties, employing the other named Defendants. (*Id.* at 3 ¶ 9–4 ¶ 11.) Defendants Saleeby, Seabrook, Schaberg, Stuart, Vasudeva, Richter, Thoma, and Singh are all allegedly physicians and board-certified gastroenterologists licensed to practice medicine in the state of South Carolina. (*Id.* at 4 ¶ 12–6 ¶ 19.) Plaintiff-Relators allege that Defendants own or

---

but still on the Government's behalf." *Id.* (citing 31 U.S.C. § 3730(c)(3)). "If successful, a relator is eligible to receive a percentage of the total recovery." *Id.* (citing § 3730(d)(1)–(2)).

operate colonoscopy clinics/endoscopy centers that billed Medicare for approximately 5,500 procedures per year, totaling to approximately $5.3 million dollars in reimbursements for such procedures. (*Id.* at 2 ¶¶ 2, 5; 8 ¶ 28.)

As to the particulars supporting their claims, Plaintiff-Relators assert that in order to obtain reimbursement through said federal programs, the physician performing such procedures has to comply with 42 C.F.R. § 416.42(a), indicating the physician must evaluate a patient for fitness to undergo anesthesia before the procedure and complete a comprehensive history and physical assessment of the patient thirty (30) days prior to the procedure. (ECF No. 16 at 8 ¶¶ 30–32.) Additionally, 42 C.F.R. § 416.42 requires that a physician must perform a "time out" prior to performing an endoscopic procedure "to confirm that the correct patient, site and procedure have been identified, and that all required documents and equipment are available and ready for use." (ECF No. 16 at 11 ¶¶ 51, 52.)

Throughout their time employed by Defendants, Plaintiff-Relators allege to have witnessed Defendants participating in several acts to bypass such requirements. First, Plaintiff-Relators allege that Defendants falsified patient records to show that Defendants performed the required pre-anesthesia/pre-procedure requirement. (*Id.* at 2 ¶ 3.) Specifically, Plaintiff-Relators allege that they witnessed Defendants schedule procedures in such a manner to prevent the pre-procedure requirements from being conducted by a physician, having other staff members perform the pre-procedure requirements (except when being investigated by the Government), and falsifying records in such a way to indicate these pre-procedure requirements were performed by a physician. (*Id.* ¶ 4, at 9 ¶ 37–11 ¶ 42.)

Next, Plaintiff-Relators allege that they themselves, along with other non-physician staff members performed the "time out" requirements after the procedure was completed by a physician.

(*Id.* at 11 ¶ 52.)  Plaintiff-Relators further indicate that, like the pre-procedure requirements, the only time the "time out" was performed by a physician, as required by 42 C.F.R. § 416.42(a), was when Defendants were under investigation by the Government.  (ECF No. 16 at 11 ¶ 53.)

Plaintiff-Relators allege that, in falsifying patient records, Defendants wanted to maximize the number of patients receiving endoscopy procedures per unit of time in order to receive higher profits than they would with compliance.  (*Id.* at 12 ¶¶ 54, 56.)  Additionally, Plaintiff-Relators allege that Defendants' actions placed patients in Defendants' care at risk.  (*Id.* ¶ 55.)

Based on the foregoing, Plaintiff-Relators filed a Complaint under seal against Defendants pursuant to the FCA on December 6, 2019.  (ECF No. 1.)  After investigating the allegations as contemplated by 31 U.S.C. § 3730(b), the United States filed a Notice of Election to Decline Intervention (ECF No. 13) under 31 U.S.C. § 3730(b)(4)(B) on April 24, 2020, to inform the court of its decision to not intervene in this action.  Immediately thereafter, the court unsealed the Complaint and other previously filed documents.  (ECF No. 14.)

On June 30, 2020, Plaintiff-Relators filed an Amended Complaint.  (ECF No. 16.)  On August 17, 2020, Defendants filed the instant Motion to Dismiss Plaintiff-Relators' Amended Complaint.  (ECF No. 21.)  On September 29, 2020, Plaintiff-Relators filed a Response in Opposition to Defendants' Motion to Dismiss contending that the court should deny the Motion in all respects.  (ECF No. 25.)  Defendants then filed a Reply to Plaintiff-Relators' Response in Opposition to Defendants' Motion to Dismiss Plaintiff-Relators' Amended Complaint (ECF No. 26) on October 6, 2020, to which Plaintiff-Relators, after receiving leave from the court (*see* ECF No. 29), filed a Surreply in Opposition to Defendants' Motion to Dismiss on October 28, 2020. (ECF No. 30.)

## II.     JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the laws of the United States, specifically 31 U.S.C. §§ 3732(a) and 3730(b), which empower district courts to hear claims arising under the FCA, and also via 28 U.S.C. § 1345 because the United States is a plaintiff.

## III.     LEGAL STANDARD

A.     Motions to Dismiss Made Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.    Pleading Requirements Generally under Rules 8 and 9

Substantive FCA claims must satisfy both Rule 8(a)'s plausibility requirement and Rule 9(b)'s particularity standard to survive a motion to dismiss.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016).  More specifically, "[i]n considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)."  *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). "To meet this standard, an FCA plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).  *See also U.S. ex. rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 285 F. Supp. 3d 44, 47 (D.D.C. 2017) ("To allege fraud, a plaintiff must state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was obtained or given up as a consequence of the fraud." (citing *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981))).  These facts are often "referred to as the 'who, what, when, where, and how' of the alleged fraud."  *U.S. ex rel. Wilson*, 525 F.3d at 379 (citation omitted).  Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison*, 176 F.3d at 783 n.5 (citing *U.S. ex rel. Thompson*

*v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

## IV.     ANALYSIS

Defendants move the court to dismiss Plaintiff-Relators' FCA claims, FCA conspiracy claim, FCA conversion claim, and reverse FCA claim.  The court addresses the parties' contentions regarding each claim below.

A.     <u>FCA Claims</u>

*1. The Parties' Arguments*

In their Motion to Dismiss, Defendants argue that Plaintiff-Relators have failed to adequately plead FCA claims alleging violation of 31 U.S.C. § 3729(a)(1)(A) and (B).  (ECF No. 21-1 at 5 (referencing ECF No. 16 at 16 ¶ 70–17 ¶ 78; citing *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) (listing elements of an FCA claim)).)  In support of this argument, Defendants assert that Plaintiff-Relators have failed to plead allegations demonstrating the required elements of scienter and materiality.  (*See id.* at 7–16 (citing, *e.g.*, *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 (2016)).)  Specifically, as to scienter, Defendants argue that Plaintiff-Relators' Amended Complaint fails to plead any specific facts showing that Defendants knowingly defrauded the Government through their alleged actions.  (*Id.* at 8 (citing *Escobar*, 136 S. Ct. at 1996 ("What matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.")), 10.)  In this regard, Defendants assert that to support a finding of scienter requires "inference upon inference to derive from these allegations that Defendants knew that their alleged failure to perform certain examinations violated any regulations, and even more so to infer from this that Defendants' knowingly made a false statement (or impliedly certified compliance with this regulation) in order to receive money from the Government."  (ECF No. 21-1 at 10 (citation omitted).)

As to materiality, Defendants argue that Plaintiff-Relators failed to show that Defendants' actions had the "natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." (ECF No. 21-1 at 11 (quoting 31 U.S.C. ¶ 3729(b)(4)).) *See also Escobar*, 136 S. Ct. at 2002, 2004 (observing that "[t]he materiality standard is demanding" and that a statutory, regulatory, or contractual requirement is "material" only if it affects "the likely or actual behavior of the recipient of the alleged misrepresentation")). As a result, Defendants assert that the actions alleged by Plaintiff-Relators are insufficient to establish materiality, which was further exemplified by the Government's decision not to intervene in the matter. (ECF No. 21-1 at 13–14.)

Plaintiff-Relators respond to Defendants' arguments asserting that of their three (2) alleged FCA claims, the second claim, which asserts that Defendants "falsif[ied] records to indicate these [pre-anesthesia] exams [and pre-operative medical histories and patient assessments] had been performed, survives because Defendants' Motion makes no reference to it. (ECF No. 25 at 5–6.) Plaintiff-Relators next assert that they have pleaded scienter "repeatedly" to include the suggestion that "Defendants behaved one way – non-compliantly – when the [G]overnment was not looking and another – compliantly – when they were." (*Id.* at 8–9 (referencing ECF No. 16 at 9 ¶ 38–10 ¶ 40; 12 ¶¶ 56, 57; 16 ¶ 73–17 ¶ 76).) Additionally, Plaintiff-Relators assert that the requisite materiality has been met based on their allegations that "Defendants' knowing refusal to perform certain regulatorily required functions has (1) improperly increased the total volume of services that was even possible to perform and thereby illegally increased the amount they could bill the [G]overnment and (2) that such inappropriate efficiency has created risks to those same patients, which the [G]overnment seeks to avoid in the required regulatory functions." (ECF No. 25 at 11.) Additionally, Plaintiff-Relators allege that scienter and materiality, in this case, are questions of

fact.  (*Id.* at 19.)

In reply, Defendants argue that Plaintiff-Relators failed to sufficiently allege FCA violations because there is no direct evidence of specific patients with falsified exams, that the false claims were material to Government repayment, and that Defendants had the requisite scienter.  (ECF No. 26 at 4, 6, and 9.)

### 2. *The Court's Review*

Plaintiff-Relators allege in their FCA claims that Defendants violated 31 U.S.C. § 3729(a)(1)(A) and (B) by billing for conditions of coverage they failed to perform, falsifying medical records of patient procedures, and indicating compliance with federal regulations in order to get reimbursement through Medicare.  (ECF No. 1 at 16 ¶ 70–19 ¶ 78.)  The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ."[2]  31 U.S.C. § 3729(a)(1)(A), (B).  "Claims arising under §[] 3729(a)(1)(A) and (B) of the FCA are fraud-based claims that must satisfy Rule 9(b)'s pleading standard."  *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013)).

### a.  Presentation of False Claims under 31 U.S.C. § 3729(a)(1)(A)

"To state a claim under the FCA [for violating 31 U.S.C. § 3729(a)(1)(A)], the plaintiff must prove: (1) that the defendant made a false statement or engaged in a fraudulent course of

---

[2] A defendant acts "knowingly" within the meaning of the act when the person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard[2] of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1)(A).  Stated differently, the FCA "require[s] no proof of specific intent to defraud" in order for a defendant to have the requisite mental culpability.  31 U.S.C. § 3729(b)(1)(B).

conduct; (2) such statement or conduct was made or carried out with the requisite scienter[3]; (3) the statement or conduct was material[4]; and (4) the statement or conduct caused the [G]overnment to pay out money or to forfeit money due." *U.S. ex rel. Harrison*, 352 F.3d at 913 (citing *Harrison*, 176 F.3d at 788). "[T]here are two ways to adequately plead [an (a)(1)(A)] presentment [claim] under Rule 9(b)." *U.S. ex rel. Grant*, 912 F.3d at 197. First, a relator can "allege with particularity that specific false claims actually were presented to the [G]overnment for payment." *Id.* (citing *U.S. ex rel. Nathan*, 707 F.3d at 457). The relator must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784)). In the alternative, the relator "can allege a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the [G]overnment for payment." *Id.* (quoting *U.S. ex rel. Nathan*, 707 F.3d at 457). In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the [G]overnment, resulting in a 'call upon the [G]overnment fisc.'"[5] *U.S. ex rel. Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86)). "The complaint must provide 'at least some explanation of the billing structure,' including where the defendant is alleged to have contracted directly with the Government." *U.S. ex rel. Cooley v. Carolina Wrecking, Inc.*, C/A No.: 2:17-0276-RMG, 2019 WL 236797, at *2

---

[3] "Scienter under the FCA encompasses actual knowledge, deliberate indifference, and reckless disregard, but does not require proof of specific intent to defraud." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 634 (4th Cir. 2015) (citing 31 U.S.C. § 3729(b)(1)).

[4] "A false statement is material if it has 'a natural tendency to influence, or be capable of influencing,' the Government's decision to pay." *United States v. Triple Canopy, Inc.*, 775 F.3d at 634 (quoting 31 U.S.C. § 3729(b)(4)).

[5] A "claim" is "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b).

(D.S.C. Jan. 16, 2019) (quoting *U.S. ex rel. Grant*, 912 F.3d at 198).

Upon its review, the court observes that Plaintiff-Relators' allege in their Amended Complaint a pattern of conduct wherein Defendants "knowingly falsified records indicating conditions of coverage/payment were performed when they were not" and billed Medicare for performance of said conditions.  (ECF No. 16 at 12 ¶¶ 56, 57.)  The court finds that these allegations support a plausible inference that Defendants knowingly presented false statements to the Government and it paid Defendants more than was warranted based on those statements.  The court further finds that these allegations sufficiently put Defendants on notice regarding their alleged misconduct.  *Cf. U.S. ex rel. Grant*, 912 F.3d at 197 (acknowledging that one of Rule 9(b)'s purposes is to provide "defendants notice of their alleged misconduct, preventing frivolous suits, and eliminating fraud actions in which all the facts are learned after discovery apply with special force to FCA claims and the accompanying presentment requirement." (citations omitted)).  If the foregoing allegations are accepted as true, Plaintiff-Relators have sufficiently alleged a violation of § 3729(a)(1)(A) of the FCA by Defendants.  Therefore, the court denies Defendants' Motion to Dismiss as to Plaintiff-Relators' FCA Claim for presentation of false claims.

### b.  Material False Statements under 31 U.S.C. § 3729(a)(1)(B)

To state a cause of action under 31 U.S.C. § 3729(a)(1)(B), Plaintiff-Relators must allege that Defendants "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).  Section 3729(a)(1)(B) "is satisfied where the defendant makes or uses a false record that is material to a false claim." *U.S. ex rel. Grant*, 912 F.3d at 200.  Moreover, "[a] claim for material false statements requires creating 'the plausible inference that false claims were presented to the

[G]overnment.'" *U.S. ex rel. Cooley*, 2019 WL 236797, at *3 (citing *U.S. ex rel. Nathan*, 707 F.3d at 457).

In the Amended Complaint, Plaintiff-Relators allege that Defendants "knowingly falsified records indicating conditions of coverage/payment were performed when they were not" and billed Medicare, Medicaid, and TRICARE for performance of said conditions. (ECF No. 16 at 12 ¶¶ 56, 57.) The falsified records included "patient medical records indicating a physician performed the patient history and physical exam immediately before the patient was prepped for surgery . . . [and] surgical policies and procedures designed to ensure surgical procedures were conducted in a safe manner." (*Id.* ¶ 56.) If the foregoing allegations are accepted as true, they demonstrate that Defendants knowingly submitted false documentation to support their requests for payment by Medicare, Medicaid, and TRICARE. (*Id.* at 12–13 ¶ 58.) Therefore, the court is persuaded that Plaintiff-Relators have sufficiently alleged a violation of § 3729(a)(1)(B) of the FCA by Defendants. Accordingly, Defendants' Motion to Dismiss should be denied as to Plaintiff-Relators' FCA Claim for material false statements.

B.     FCA Conspiracy Claim

   1.   *The Parties' Arguments*

Defendants first argue that Plaintiff-Relators' FCA conspiracy claim should be dismissed based on their failure to state a proper FCA conspiracy claim. (ECF No. 21-1 at 17 (citing *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) ("[T]here can be no liability for conspiracy where there is no underlying violation of the FCA.")).) Defendants next argue that the conspiracy claim is inadequately pleaded because Plaintiff-Relators failed to allege "a specific intent to defraud the Government," and "do not identify who entered into the agreement, when they did so, or what they sought to gain." (*Id.* at 18.)

Conversely, Plaintiff-Relators argue that the evidence provided shows clear conspiracy among all Defendants because they all acted in tandem and agreement to defraud the Government. (ECF No. 25 at 21–22.)  Plaintiff-Relators assert that they have clearly alleged "the identity of the co-conspirators, their agreement and specific intent to defraud, or acts taken in furtherance of the same."  (*Id.* at 22.)

In reply, Defendants, again, argue that Plaintiff-Relators provided no specific evidence of "communications, contracts, or interactions between the Defendants that would support the existence of a conspiracy."  (ECF No. 26 at 12.)

*2.  The Court's Review*

As their second cause of action, Plaintiff-Relators allege that Defendants conspired resulting in a breach of the FCA.  To state a FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the [G]overnment, and (2) at least one act performed in furtherance of that agreement."  *U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010) (citation omitted).  "Moreover, 'a plaintiff asserting a claim under § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end.'"  *Id.* (quoting *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 665 (2008)).  "The conspirators must have 'shared a specific intent to defraud the Government.'"  *Id.* (citation omitted).

Upon its review of the Amended Complaint, the court observes that Plaintiff-Relators' allegations do not create a reasonable inference that there was an unlawful agreement between Defendants to defraud the United States.  *E.g.*, *U.S. ex rel. Campbell v. KIC Dev., LLC*, EP-18-CV-193-KC, 2019 WL 6884485, at *16 (W.D. Tex. Dec. 10, 2019) ("The fact that multiple people

caused similar false claims to be submitted over a similar period of time 'does not, by itself, do more than point to a possibility of an agreement among them.'" (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009))).   Specifically, the court observes that the Amended Complaint has general allegations regarding Defendants' alleged scheme, but lacks allegations detailing a meeting of the minds by Defendants.  To this point, the court observes that the word agreement is never used in the Amended Complaint.  Accordingly, the court finds that Plaintiff-Relators' FCA conspiracy claim  must be dismissed pursuant to Rule 12(b)(6).

C.    FCA Conversion Claim

  *1.  The Parties' Arguments*

Defendants argue that Plaintiff-Relators' FCA conversion claim should be dismissed because their factual allegations neither indicate that "Defendants knowingly converted Government funds," nor do they allege anything different than Plaintiff-Relators' FCA claims. (ECF No. 21-1 at 20.)

Plaintiff-Relators opposed dismissal of their FCA conversion claim arguing that Defendants knowingly pursued Government funds in a fraudulent manner, and then converted those funds upon reimbursement, thus meeting all the elements required by statute.  (ECF No. 25 at 22.)

Defendants counter this argument by reemphasizing that Plaintiff-Relators cannot base a conversion claim on the same grounds as their original FCA claims.  (ECF No. 26 at 12.)

  *2.  The Court's Review*

In their third cause of action for FCA conversion, Plaintiff-Relators allege that Defendants failed to remit funds collected from the Government on false pretenses, causing a lower amount of federal funds available to others.  (ECF No. 16 at 18 ¶¶ 82–86.)

A plaintiff may bring an FCA claim "under a 'conversion' theory of liability against 'any person who has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property.'" *U.S. ex. rel. Kasowitz Benson Torres*, 285 F. Supp. 3d at 47 (quoting 31 U.S.C. § 3729(a)(1)(D)). "For a defendant to 'know' that he is delivering or causing to be delivered 'less than all' of a certain property 'used, or to be used, by the Government,' he must necessarily also know that the property belongs to the [G]overnment." *Id.* at 55 (quoting *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016)).

The court observes that Plaintiff-Relators generally allege that "[b]y providing services that did not include a physician examination and billing Medicare as if the services were provided by a physician, Defendants fraudulently inflated the amount of claims it made to federal health insurance programs . . . ." (ECF No. 16 at 18 ¶ 84.) Therefore, "Defendants had possession, custody, or control over [G]overnment monies [over]paid to them pursuant to interim reimbursements that were subject to correction." (*Id.* ¶ 83.)

Upon its review, the court observes that the sufficiency of these allegations depends on whether they are evaluated under Rule 8(a) or Rule 9(b). Because it appears to the court that Defendants' knowledge is the determinative factor for a FCA conversion claim, and not any alleged fraud, the court finds that Plaintiff-Relators' allegations are sufficient under Rule 8.[6] *See FTC v. Lights of Am. Inc.*, No. SACV 10-1333 JVS (MLGx), 2011 WL 1515158, at *3 (C.D. Cal. Mar. 31, 2011) ("Allegations of the individuals' knowledge are subject to the general pleading standard of Rule 8(a) rather than the heightened pleading standard of Rule 9(b) . . . ."); *Francosteel*

---

[6] The court observes that there are very few decisions analyzing the pleading aspect of a FCA conversion claim. As recently as 2017, a court observed that "[f]ew courts have considered FCA's conversion provision . . . ." *U.S. ex. rel. Kasowitz Benson Torres*, 285 F. Supp. 3d at 55.

*Corp. v. Nat'l Indus., Inc.*, No. 90 C 20073, 1991 WL 166732, at *2 (N.D. Ill. Mar. 16, 1991) ("A review . . . reveals no argument of fraud[,] [t]herefore, the court will not judge the sufficiency . . . under the standard of Rule 9(b), but rather under the liberal standard of Rule 8(a) of the Federal Rules of Civil Procedure.). *Cf. Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1077 n.17 (8th Cir. 2016) (observing that § 3729(a)(1)(D) is not confined to fraud against the Government) (Riley, W., concurring). As a result, the court finds that Plaintiff-Relators' allegations appropriately specify property that Defendants possessed, but failed to deliver to the Government. Therefore, the court denies Defendants' Motion to Dismiss Plaintiff-Relators' FCA conversion claim.

D.    Reverse FCA Claim

    *1. The Parties' Arguments*

       Finally, as to Plaintiff-Relators' reverse FCA claim, Defendants contend that it should be dismissed because the Amended Complaint fails to "identify any 'obligation to pay or transmit money or property to the Government' that Defendants improperly avoided or decreased." (ECF No. 21-1 at 21 (quoting 31 U.S.C. § 3729(a)(1)(G)).) To this point, Defendants argue that the Government's ability to pursue reimbursement for fraudulent claims does not establish an obligation to the Government. (*Id.* (citing *U.S. ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 191 (D. Md. 2019)).) Defendants additionally argue that a reverse FCA claim cannot be grounded on the same conduct as the original FCA claims. (*Id.*)

       In response, Plaintiff-Relators argue that Defendants' stance that retention of falsely obtained payments does not create an obligation to repay the Government is not binding law in the Fourth Circuit, and that such an obligation should exist. (ECF No. 25 at 24.)

       Defendants, however, argue that there is no *expressed* obligation for Defendants to repay

any such money to the Government.  (ECF No. 26 at 13.)

2. *The Court's Review*

In their reverse FCA claim, Plaintiff-Relators allege Defendants violated 31 U.S.C. § 3729(a)(1)(G) by failing to take corrective action for their false claims in repaying the Government for any money obtained through the facts alleged.  (ECF No. 16 at 18 ¶ 87–19 ¶ 91.)

A reverse "theory of liability" FCA claim exists against "any person who: knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  *U.S. ex. rel. Kasowitz Benson Torres*, 285 F. Supp. 3d at 47 (quoting 31 U.S.C. § 3729(a)(1)(G)).  "In a reverse false claims suit, the defendant's action does not result in improper payment by the [G]overnment to the defendant, but instead results in no payments to the [G]overnment when a payment is obligated."  *Id.* (quoting *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004)).  "To prove a claim under subsection (a)(1)(G), a plaintiff must show: (1) proof that the defendant made a false record or statement (2) at a time that the defendant had a presently-existing obligation to the [G]overnment—a duty to pay money or property."  *U.S. ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 268 (S.D.N.Y. 2020) (citations omitted).

Upon its review, the court observes that Plaintiff-Relators' reverse FCA claim is predicated upon Defendants' failure to return overpayments to the United States made by Medicare, Medicaid, and TRICARE.  Under these circumstances, Plaintiff-Relators are alleging that after overcharging Medicare, Medicaid and TRICARE, Defendants further violated the FCA by failing to return the overpayments.  This claim appears to be based on the same allegedly fraudulent billing underlying the FCA claims, and Plaintiff-Relators' allegations do not identify a separate obligation

to return overpayments to the Government.  In this regard, "[i]n cases where a plaintiff alleges a reverse false claim by claiming that the defendant fraudulently overcharged the [G]overnment and then failed to repay the [G]overnment, courts have consistently dismissed the [reverse FCA] claim as redundant." *U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, Case No. CV 17-1694 PSG (SSx), 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019) (citation omitted). *See also United States v. Lab. Corp. of Am. Holdings*, C/A No.: No. 9:14-cv-3699-RMG, 2019 WL 236799, at *3 (D.S.C. Jan. 16, 2019) ("However, it is well settled that 'reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B).'" (citations omitted)).  Therefore, because Plaintiff-Relators' reverse FCA claim is redundant of their primary FCA claims, Defendants are entitled to dismissal of the reverse FCA claim.  *Id.*

E.    Rule 9(b) Pleading Requirement

   *1.  The Parties' Arguments*

   Defendants additionally argue that Plaintiff-Relators' Amended Complaint should be dismissed because it fails to meet the pleading requirements for fraud established by Rule 9(b). (ECF No. 21-1 at 22.)  Specifically, Defendants argue that the allegations in the Amended Complaint are inadequate under Rule 9(b) because:

> There are no allegations connecting the dots or alleging: 1) which claims are false; 2) how false claims were submitted; 3) when bills were submitted to the Government; 4) who submitted the false claims; or 5) any facts supporting that any false claims were actually submitted. Relators simply do not allege anything about Defendants' billing procedures, and, for all of these reasons, the FCA claims under § 3729(a)(1)(A) are not sufficiently plead under Rule 9(b).  . . .  The general allegations in the Amended Complaint that unidentified Medicare patients did not receive required examinations do not identify with particularity any claims that would trigger liability under the FCA, and, without any allegations regarding the billing structure, Relators' FCA claims do not meet the standard imposed by Rule 9(b).

(ECF No. 21-1 at 24.)  Defendants further argue that in referring to the named Defendants as "all

Defendants," Plaintiff-Relators failed to meet Rule 9(b)'s requirements because they lump Defendants together and do not allege any claim with particularity as to any Defendant. (*Id.* at 25 (citing, *e.g.*, *U.S. ex rel. Hendrickson v. Bank of Am.*, 343 F. Supp. 3d 610, 633 (N.D. Tex. 2018) ("Relator entirely fails to distinguish between Defendants."); *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470–71 (N.D. Tex. 2012) ("Rule 9(b) requirements must be met as to each defendant. It is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another.")).)

In response to the Rule 9(b) argument, Plaintiff-Relators argue that all Defendants are named in their individual capacity and grouping them together was for conciseness. (ECF No. 25 at 20.) Additionally, Plaintiff-Relators distinguish the case at hand from cases cited, alleging that there are no pleading defects because, here, this "is a conventional submission process as pled and one linearly corrupted by the fraudulent conspiratorial noncompliance of the Defendants." (*Id.* at 27.)

2. *The Court's Review*

As to Defendants' argument that Plaintiff-Relators failed to meet the pleading requirements of Rule 9(b), the court observes that it addressed this contention in the sections of this Order devoted to each of Plaintiff-Relators' individual claims. The court further observes that it applied Rule 9(b) to Plaintiff-Relators' allegation where warranted and the outcome of that application is contained in those aforementioned sections. Accordingly, the court denies Defendants' Motion to Dismiss as it relates to a general dismissal of the Amended Complaint based on the alleged failure to meet the pleading requirements for fraud established by Rule 9(b).

F.     Reliance on Interpretive Guidance

    *1.  The Parties' Arguments*

    Finally, Defendants argue that Relators' Amended Complaint should be dismissed because of their clear reliance on interpretative guidance under the Medicare Act.  (ECF No. 21-1 at 26, 29 (citing ECF No. 16 at 2 ¶¶ 2, 4; 8 ¶¶ 30, 31, 32; 11 ¶¶ 51, 52; 12 ¶¶ 57, 58; 13 ¶ 60–15 ¶ 67; 16 ¶ 73–17 ¶ 74).)  In support of this argument, Defendants assert that "as a matter of law, there can be no FCA liability for allegedly false certifications of medical necessity where the Relator relies upon interpretive guidance under the Medicare Act, which was not promulgated through public notice and comment."  (ECF No. 21-1 at 26 (citing *Polansky v. Exec. Health Res., Inc.*, 422 F. Supp. 3d 916 (E.D. Pa. 2019)).)

    Plaintiff-Relators, however, argue that their claims are based on Defendants' failure to comply with regulations outlined in 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52.  (ECF No. 25 at 27.)  They assert that the regulations "are not interpretations and the Defendants do not contend that they are not appropriate predicate bases for an FCA claim."  (*Id.*)  Further, Plaintiff-Relators state that their use of interpretative guidelines is for additional background information.  (*Id.* at 28.)

    *2.  The Court's Review*

    The court considered the parties' arguments and is not persuaded that Plaintiff-Relators claims should be dismissed because they cite to interpretive guidance.  The court finds that Plaintiff-Relators' claims are not based on interpretive guidance, but merely use it to show further evidence of resources available to Defendants, and to provide relevant background information regarding the regulations.  *E.g.*, *Paraham v. Atriums Mgmt. Co., Inc.*, Case No. 16-2539, 2019 WL 1434965, at *4 n.2 (D. Kan. Mar. 29, 2019) ("Although the interpretive guidance is not controlling,

[courts] may resort to it for guidance." (quoting *Burgard v. Super Valu Holdings, Inc.*, No. 96-1199, 1997 WL 278974, at \*3 n.2 (10th Cir. May 27, 1997))).  The court denies the Motion to Dismiss in this respect.

## V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff-Relators' second and fourth claims alleging violations of 31 U.S.C. § 3729(a)(1)(C) and (G); but **DENIES** Defendants' Motion to Dismiss as to Plaintiff-Relators' first claim alleging violation of 31 U.S.C. § 3729(a)(1)(A) and (B), and their third claim alleging violation of § 3729(a)(1)(D). (ECF No. 21.)

**IT IS SO ORDERED.**


*J. Michelle Childs*

United States District Judge

March 30, 2021
Columbia, South Carolina